**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br>525 East Cotati Avenue<br>Cotati, California 94931,<br><br>        *Plaintiff*,<br><br>  v.<br><br><br>ANIMAL AND PLANT HEALTH<br>INSPECTION SERVICE,<br>4700 River Road<br>Riverdale, Maryland 20737,<br><br>        *Defendant*. | **Case No. 1:19-cv-959** |

## COMPLAINT

1.      This is an action for declaratory judgment and injunctive relief, challenging the Defendant Animal and Plant Health Inspection Service (APHIS)'s failure to respond to a records request under the Freedom of Information Act (FOIA) related to its decision to cancel the Animal Welfare Act (AWA) license of the Zoological de Puerto Rico at Mayaguez (Mayaguez Zoo), which houses members of endangered species in abysmally substandard conditions that continually lead to animal cruelty and deaths.

2.      Defendant has violated FOIA by failing to make a determination and otherwise respond to the request within the statutorily prescribed time limit, failing to disclose the requested documents, and unlawfully withholding the requested information.

3.      Plaintiff Animal Legal Defense Fund (ALDF) now asks the Court to order Defendant to respond to the request and produce all responsive agency records improperly

1

withheld.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to FOIA, 5 U.S.C.

§ 552(a)(4)(B). This Court also has jurisdiction over this action under 28 U.S.C. § 1331 (federal

question) and 28 U.S.C. §§ 2201-02 (declaratory judgment and further relief).

5.     Venue is proper in this Court under 5 U.S.C. § 522(a)(4)(B), which provides

venue for FOIA cases in the District of Columbia.

6.     This Court has authority to award costs and attorneys' fees under 28 U.S.C.

§ 2412 and 5 U.S.C. § 552(a)(4)(E).

## PARTIES

7.     Plaintiff **Animal Legal Defense Fund** (ALDF) is a national nonprofit

organization founded in 1979 and headquartered in Cotati, California. ALDF's mission is to

protect the lives and advance the interests of animals through the legal system. ALDF advances

this mission by filing lawsuits, providing legal assistance and training to prosecutors in animal

cruelty cases, supporting animal protection legislation, and providing resources and opportunities

to the legal community to advance the emerging field of animal law. ALDF conducts this work

on behalf of itself and more than 235,000 members and supporters throughout the United States,

including individuals who live near and closely monitor the Mayaguez Zoo.

8.     Advocating for effective oversight and regulation of facilities that house and

exhibit animals in order to protect captive animals from harm is one of ALDF's central goals. In

addition to advocating directly for captive animals whose rights under state and federal laws are

being violated, ALDF fights to ensure that the agencies charged with regulating animal

exhibitors are transparent when carrying out their statutory duties. Access to information about

how and whether APHIS regulates specific animal exhibitors is paramount to ALDF's ability to carry out its mission of protecting captive animals and advancing their interests through the legal system.

9.      Defendant **Animal and Plant Health Inspection Service**, a subdivision of the United States Department of Agriculture (USDA), is an agency of the United States government with possession and control over the records Plaintiff seeks. APHIS specifically oversees the Animal Care Program, which is tasked with ensuring the humane treatment of animals covered by the Animal Welfare Act.

## LEGAL FRAMEWORK

*Animal Welfare Act*

10.      The Animal Welfare Act (AWA) establishes a regulatory framework to promote minimum standards for the humane treatment of animals by four general categories of commercial animal enterprises: (1) animal dealers, such as brokers who buy and sell animals, and facilities that breed animals for exhibition, sale, or research; (2) exhibitors, such as zoos and circuses; (3) animal research facilities; and (4) carriers and intermediate handlers, such as airlines that do not buy or sell animals but transport them for dealers. *See* 7 U.S.C. § 2132; 9 C.F.R. § 1.1.

11.      APHIS is responsible for administering and enforcing the AWA and its implementing regulations on behalf of USDA. *See* 7 U.S.C. §§ 2131 *et seq.*; 9 C.F.R. §§ 1.1 *et seq.*

12.      Animal dealers and exhibitors must obtain and maintain a license from USDA to engage in regulated activities. 7 U.S.C. § 2133; 9 C.F.R. §§ 2.1, *et seq.*

3

13.     In addition to complying with licensing and registration requirements, regulated entities must comply with other requirements such as providing minimum standards of care for animals and maintaining certain types of records. *See* 9 C.F.R. §§ 2.1 *et seq.*; 9 C.F.R. §§ 3.1, *et seq*. These standards of care include the provision of adequate shelter, nutrition, sanitization, exercise, and veterinary care. 9 C.F.R. §§ 3.1, *et seq.*

***Freedom of Information Act***

14.     FOIA promotes open government by providing every person with a right to request and receive federal agency records. 5 U.S.C. § 552(a)(3)(A), (f).

15.     In furtherance of its purpose to encourage open government, FOIA imposes strict deadlines on agencies to provide responsive documents to FOIA requests. An agency must respond to a FOIA request by issuing a "determination" within twenty days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i).

16.     The determination "must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

17.     The agency must immediately notify the requester of the determination and the reasons for it, and of the right of such person to appeal an adverse determination. The responding agency has twenty days to make a determination with respect to any appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

18.     FOIA explicitly requires agencies to provide information about the status of a request, specifically including "an estimated response date on which the agency will complete action on the request." 5 U.S.C. § 552(7).

19.     An agency's failure to comply with any timing requirements is deemed constructive denial and satisfies the requester's requirement to exhaust administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

20.     A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued withholding of public records. 5 U.S.C. § 552(a)(4)(B).

## STATEMENT OF FACTS

### *The Mayaguez Zoo*

21.     The Mayaguez Zoo, a 45-acre facility located in Mayaguez, Puerto Rico, is billed as Puerto Rico's only official zoo.

22.     On information and belief, the Zoo houses over 300 individual animals; about 90 of these animals are members of endangered species.

23.     Prior to 2018, the Mayaguez Zoo held an exhibitor's license under the AWA.

24.     While the zoo was licensed under the AWA, APHIS routinely cited the zoo for violations of the AWA dating back to at least 2007.

25.     More recently, an August 2017 AWA inspection report revealed a "critical" violation in which newborn tiger cubs were moved by caretakers, which resulted in the rejection of the cubs by their mother and their eventual death. Other reports described the death of four lion cubs, one lion cub who was improperly fed, and one adult tiger who was euthanized due to kidney failure and other health problems.

26.     In addition to these animal deaths, APHIS routinely cited the facility for endangering animals by failing to protect members of prey species from members of predator species housed at the zoo, failing to protect certain individuals from extreme heat, exposing

individuals to potential physical hazards, and allowing feed to become adulterated due to unsanitary and substandard conditions.

27.     As reported by the Associated Press, other APHIS inspection reports show that many animals have been killed at the zoo for unclear reasons and by inhumane methods. *See* Danica Coto, *Report: Inhumane Killings, Injuries at Puerto Rico's Zoo*, AP (Dec. 19, 2018), https://www.apnews.com/017177a358b64dc3bc79c84357817c30. A puma, coatimundi, and baboon were killed simply because they were "'not fit for exhibition.'" *Id.* (quoting APHIS inspections reports). And "[o]ne federal inspection report noted that two guinea pigs on exhibition were fed alive to reptiles, and that deer on exhibition were fed to big cats after having their jugulars cut without using a humane slaughter method." *Id.*

28.     An Executive Committee created by the Governor of Puerto Rico to investigate the Zoo issued a similar report detailing the "dire" lack of attention to animal health and safety at the Zoo from November 2017 through August 2018. According to the report: two female pumas died, one of whom suffered from lameness for months before her death; a male puma was injured from his enclosure and showed signs of being in pain; a chimpanzee named Magnum had an untreated heart condition; Mundi, an African elephant, suffered from arthritis caused by the substrate in her enclosure; lemurs were in need of tuberculosis testing, physical exams, vaccines, and deworming; an antelope named Bongo Macho was injured from the substrate in his enclosure and began showing signs of limpness in his rear foot; a tiger named Angel died due to lack of proper veterinary care and a departure from the Zoo's standard operating procedures; and four lions were suffering from mosquito and fly bites in their ears and needed physical exams, birth control, and prenatal care. The report stated that ninety-seven animals overall were in need

of medical attention at the time, and that thirty animals overall were in "dire" need of medical attention.

29.     In January 2018, when the renewal of the Zoo's AWA license was imminent, ALDF formally requested that APHIS not renew the Zoo's license due to its clear history of noncompliance with AWA standards, which resulted in animal cruelty and death. APHIS did not respond to ALDF's request.

30.     On February 6, 2018, the Zoo's exhibitor license appeared as "cancelled" in APHIS's online inspection report database without explanation.[1]

***The FOIA Request***

31.     On March 7, 2018, ALDF submitted a FOIA request to APHIS requesting "all documents related to the cancellation of the Animal Welfare Act exhibitor license for Zoological De P.R. at Mayaguez (certificate no. 94-C-0014)."

32.     The purpose of the request was to determine the basis for the cancellation, and specifically whether APHIS affirmatively cancelled the license or the Zoo simply failed to apply for a renewal or pay the renewal fee.

33.     APHIS provided an acknowledgement letter on March 8, 2018, assigning the request tracking no. 2018-APHIS-02854-F and providing the contact information for the FOIA officer assigned to the request. The letter stated the "target response date" was April 4, 2018.

34.     Indeed, FOIA required APHIS to respond to the request by April 4, 2018.

35.     On April 9, 2018, ALDF emailed the assigned FOIA Officer to request a status

---

[1] Despite this, the Zoo continues to exhibit animals to the public even without an AWA license. In February 2019, while ALDF's FOIA request was pending before APHIS, ALDF formally requested that APHIS take enforcement action against the Zoo for continuing to exhibit animals without an AWA license and for operating in violation of the AWA's substantive animal care standards.

update.

36.     The Officer responded on April 10, 2018, stating, "At this time, I am still waiting for the program office to complete the search."

37.     When ALDF followed-up on the same date to request an estimated response date, the Officer replied, "I'm sorry we are not allowed to provide an estimated response date. I will check on the status and see if I can move it along." The Officer did not respond to ALDF's request, that same day, for further information on APHIS's policy against providing estimated response dates.

38.     ALDF again contacted the FOIA Officer for a status update on October 29, 2018. The Officer responded on November 1, 2018, again stating "At this time, I am still waiting on the program office to complete their search of records and provide responsive records for review."

39.     ALDF followed-up with requests for status updates, including estimated response dates, on November 1, November 6, November 12, and November 27, 2018.

40.     In its inquiry on November 27, 2018, ALDF reiterated that the "request pertains to a facility for which APHIS revoked the license in January, yet animals continue to die there due to lack of veterinary care, food, and shelter." The inquiry further stressed the "urgency of this situation" and that the "matter is of utmost importance to ALDF."

41.     On November 28, 2018, the FOIA Officer explained that ALDF's request was sent to two program offices, one of which did not have any responsive records. The other office, Animal Care, was "still conducting their search for responsive records and has not yet provided the records to the FOIA office for review."

42.     ALDF again inquired about the status of the request on February 4, 2019.

43.     On February 7, 2019, the FOIA Officer responded that he was "still waiting for the Animal Care program office to complete their search for records," and that the request was number 38 in a queue of 70 requests.

44.     On March 6, 2019, the FOIA Officer confirmed he was still "waiting for the program office to complete their search and provide the records for my review."

45.     To date, APHIS has not made a determination, provided any documents, or responded in any way to ALDF's request for documents—nor has APHIS, at a minimum, provided an estimated response date to ALDF's request.

## CLAIM FOR RELIEF

### Violation of the Freedom of Information Act

46.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-45 in the complaint as if fully set forth herein.

47.     ALDF made a proper FOIA request for information relating to the Mayaguez Zoo. 5 U.S.C. § 552(a)(3)(A).

48.     APHIS has unlawfully withheld the requested information from ALDF by failing to provide it within statutory deadlines, which violates FOIA. 5 U.S.C. § 552(a)(6)(A).

49.     APHIS has also failed to provide an estimated date by which it will release responsive records, which violates FOIA. 5 U.S.C. § 552(7).

50.     APHIS has constructively denied ALDF's request for information by failing to respond within the statutory deadline, and ALDF has exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Order APHIS to expeditiously produce all records requested by Plaintiff;

B.  Declare unlawful APHIS's failure to respond to Plaintiff's FOIA request;

C.  Declare unlawful APHIS's failure to produce records that Plaintiff has requested;

D.  Declare unlawful APHIS's failure to provide any estimated response or decision dates;

E.  Exercise close supervision over APHIS as it processes Plaintiff's request;

F.  Award to Plaintiff all costs and reasonable attorneys' fees as provided in 5 U.S.C. § 552(a)(4)(E) or any other law; and

G.  Grant other and further relief as the Court may deem just and proper.

Respectfully submitted this 4th day of April, 2019.

*/s/ Cristina Stella*

Cristina Stella (D.D.C. Bar No. CA00012)
Daniel Waltz (D.D.C. Bar No. D00424)
ANIMAL LEGAL DEFENSE FUND
525 East Cotati Avenue
Cotati, CA 94931
Phone: (707) 795-2533
Email: cstella@aldf.org
        dwaltz@aldf.org

*Attorneys for Plaintiff*